FRANK L. McCOY ET AL., APPELLANTS, V. CITY OF OMAHA ET AL., APPELLEES.

FILED JANUARY 9, 1911. NO. 16,231.

1. **Municipal Corporations: STREET IMPROVEMENTS: VALIDITY OF ORDINANCES.** The mayor and council of cities of the metropolitan class had power under the act of 1897 (laws 1897, ch. 10) to prescribe by ordinance duties of the board of public works not specified in the statute.

2. ———: ———: ———. The ordinance of the city of Omaha directing the board of public works to advertise for bids for street improvements was within the power of the mayor and council and valid.

3. ———: ———: NOTICE: PRESUMPTIONS. A notice inviting bids for street improvements, signed by the chairman and secretary of the board of public works, will be presumed to have been authorized by that board in the absence of evidence to the contrary.

4. ———: ———: VALIDITY OF PROCEEDINGS. It was not necessary that the city council should fix a definite time and place for property owners to file protest against a street improvement, or to designate their choice of material. The statute of 1897 provided that 30 days should be allowed for those purposes after the

publication of the ordinance authorizing the improvement, and if such time was allowed before proceeding with the improvement the statute was complied with.

5. ———: ———: EQUALIZATION OF ASSESSMENTS: NOTICE. The act of 1897 required the council to sit as a board of equalization of special assessments on certain specified days, and to give notice of such sitting "for at least six days prior thereto." Notice given for six days immediately prior to one of the days fixed by statute for such sitting that on said day so fixed by statute assessments in a certain specified district would be equalized was sufficient.

6. ———: ———: ———: ———. Under that statute notice of the sitting of the council as a board of equalization might be given by the board of public works when specifically directed by the mayor and council to give such notice.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*McCoy & Olmstead, pro se.*

*H. E. Burnam, I. J. Dunn* and *J. A. Rine, contra.*

SEDGWICK, J.

In July, 1899, the mayor and council of the city of Omaha enacted an ordinance, No. 4606, creating street improvement district No. 679, embracing that part of Thirty-fifth street which lies between Farnam and Dodge streets. Pursuant to this ordinance and other ordinances and proceedings on the part of the mayor and council and other officers, the specified district was improved by paving and curbing the street, and special assessments were levied against the lots abutting thereon. These plaintiffs, who are owners of lots abutting on said improvement, brought this action to enjoin the collection of said special assessments. Upon trial in the district court for Douglas county there were general findings against the plaintiffs and their action dismissed. The plaintiffs have appealed.

It is contended that no valid action was taken by the proper authorities fixing the time within which bids might

be made for the construction of the work, or fixing the
time within which property owners might protest against
the improvement, or in which property owners might ex-
press their preference as to the material to be used, and
also that the council took no action in fixing the time for
the equalization of assessments and gave no notice of the
meeting. for the purpose of equalizing the assessments.
The city charter (laws 1897, ch. 10, sec. 101a) provides
that the board of public works and the members of said
board shall perform such duties, not specified in the
statute, as may be devolved upon them by ordinance.  The
ordinance above referred to creating the improvement dis-
trict provided that the board of public works should "ad-
vertise for bids for the improvement of said street," and
should also publish a notice to property owners within
the district to select the material for the pavement within
their district.  There was another ordinance of the city
of Omaha in force at that time prescribing the powers
and duties of the board of public works.  This ordinance
provided that it shall be the duty of the board to adver-
tise for such proposals, and that the advertisement should
be for a period of not less than two weeks, "in the official
daily paper of the city, said advertisement to be inserted
at least twice a week."  The notice to bidders was pub-
lished July 18, 19, 20, 21, 22 and 24, the 23d being Sunday.
The ordinance in this respect was not strictly complied
with, as it was not published twice in the second week.
This notice is assailed for this defect in its publication.
It is not alleged that any one was prevented from bidding,
nor that too much was paid for the improvement.  This
defect in the notice was not jurisdictional.  On the 18th
day of July notices were published which appear to be
considered to be sufficient in form and in the manner of
their publication to give the necessary notice to property
owners to select material for the paving, and also to give
notice of the time limited for protesting against the im-
provement.  The general objection made to these notices
is that they do not appear to have been authorized by any

positive action of the city council or the board of public works. They are signed, "Board of Public Works, Andrew Rosewater, Chairman; William Coburn, Secretary." The board of public works consisted of three members. The duties of the chairman were very prominent. There could be no quorum of the board to do business without the chairman, and the chairman with either of the other members constituted a quorum. It was the duty of this board, under the statute and the ordinances above referred to, to make these publications. The two officers signing these notices constituted a majority of the board, and were, by the statute, made a quorum for the transaction of the business of the board. It seems apparent that their action could not be challenged collaterally as not being authorized by the board.

As we understand plaintiffs' briefs, they rely upon the further contention, also, that it was required by the statute that the time and place of receiving proposals for the work, and for filing protests by property owners, and for selecting materials by property owners should be specifically fixed by the mayor and council; that the fixing of these times and places was jurisdictional, and as this was not done the assessments are void. There does not seem to be any merit in this contention. The provision of the statute is that, if protest is filed within 30 days after the publication of the ordinance, the improvement shall not be authorized; and it shall be the duty of the mayor and council to give the property owners 30 days to designate materials, and the improvements "shall be done with contracts with the lowest responsible bidder." These respective provisions of the statute were fully complied with, and it was not required that the time should be definitely fixed in advance when these matters would be acted upon by the mayor and council. There is no allegation in the petition that any property owners were prevented from protesting against the improvements, or selecting materials, or that the work was not let to the lowest bidder, or that any who desired were prevented from bidding.

Section 151 of the statute (laws 1897, ch. 10) requires that the council "shall sit as a board of equalization for all special assessments, excepting for wooden sidewalks, which may be hereafter levied, on the second Tuesday of each of the following months, to wit, March, June, September and December. Such sessions to be held between the hours of 10 A. M. and 5 P. M. in the city council chamber, and such sessions shall be for not less than three consecutive days." The city council convened on the 12th day of December, 1899, as a board of equalization, and continued in session for three successive days from 10 A. M. to 5 P. M. on each day, pursuant to notice signed by a majority of the board of public works. The statute (section 152) requires that notice of this meeting of the council as a board of equalization shall be given by the city council "in the same manner as is above provided in the case of general taxes." This relates to section 141, which requires that notice of the sitting of the board of equalization shall be given "for at least six days prior thereto," and was sufficiently complied with. It was published from the 5th to the 11th of December, inclusive. It was not necessary that the members of the city council should give this notice in person. The council by ordinance directed the board of public works to give the notice, specifying what the notice should be, and this was a substantial compliance with the statute. The proceedings of the council so far as they relate to the matters complained of in the brief appear to be sufficient.

The judgment of the district court is therefore

AFFIRMED.